Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSEMARIE JUERLING,<br><br>           Plaintiff,<br><br>      vs.<br><br>IMARA, INC., DAVID M. MOTT,<br>RAHUL D. BALLAL, DAVID BONITA,<br>MARK CHIN, EDWARD CONNER,<br>BARBARA J. DALTON, CARL<br>GOLDFISCHER, and LAURA A.<br>WILLIAMS,<br><br>           Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Rosemarie Juerling ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.    Plaintiff brings this stockholder action against Imara, Inc. ("Imara" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Enliven Therapeutics, Inc., through merger vehicle Iguana Merger

Sub, Inc. ("Merger Sub" and collectively with Parent, "Enliven") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a October 13, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Enliven's common stock will be converted into the right to receive a number of shares resulting in Enliven shareholders owning 84% of the Pro Forma Company, thus diluting Imara Shareholder's interest in the surviving entity.

3.      Thereafter, on November 10, 2022, Imara filed a Registration Statement on Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into an agreement which will provide no consideration to any Company stockholder whatsoever, other than the dilution of their shares.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Imara and Enliven, provided

by Imara and Enliven management to the Board and the Board's financial advisor SVB Securities

LLC ("SVB Securities") (c) the data and inputs underlying the financial valuation analyses, if any,

that purport to support the fairness opinion created by SVB Securities, if any, and provide to the

Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated,

resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Indiana and, at all times relevant hereto, has been an Imara

stockholder.

8.      Defendant Imara clinical-stage biopharmaceutical company, develops and

commercializes therapeutics for patients with rare genetic disorders of hemoglobin. Imara is

incorporated in Delaware and has its principal place of business at 116 Huntington Avenue, 6th

Floor, Boston, MA.  Shares of Imara common stock are traded on the Nasdaq Stock Exchange

under the symbol "IMRA".

9.      Defendant David M. Mott ("Mott") has been a Director of the Company at all

relevant times.  In addition, Mott serves as the Chairman of the Board of Directors.

10.     Defendant Carlton Ballal ("Ballal") has been a director of the Company at all

relevant times.

11.     Defendant David Bonita ("Bonita") has been a director of the Company at all

relevant times.

12.     Defendant Mark Chin ("Chin") has been a director of the Company at all relevant

times.

13.    Defendant Edward Conner ("Conner") has been a director of the Company at all relevant times.

14.    Defendant Barbara J. Dalton ("Dalton") has been a director of the Company at all relevant times.

15.    Defendant Carl Goldfischer ("Goldfischer") has been a director of the Company at all relevant times.

16.    Defendant Laura A. Williams ("Williams") has been a director of the Company at all relevant times.

17.    Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18.    Non-Party Enliven is a clinical-stage biopharmaceutical company focused on the discovery and development of small molecule inhibitors to help patients with cancer live not only longer, but better.

19.    Non-Party Merger Sub is a wholly owned subsidiary of Imara created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

23.     Imara, Inc. a clinical-stage biopharmaceutical company, develops and commercializes therapeutics for patients with rare genetic disorders of hemoglobin. Its lead product candidate is IMR-687, an oral and once-a-day therapeutic that is in Phase 2b clinical trials for the treatment of sickle cell disease and ß-thalassemia. The company also develops IMR-261, an oral and clinical-ready activator of nuclear factor erythroid 2 related factor 2 for the treatment of hemoglobinopathies, iron disorders, and potentially other areas. Imara Inc. was incorporated in 2016 and is headquartered in Boston, Massachusetts.

24.     The Company's most recent performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated impressive clinical success.  For example, in the March 15, 2022 press release announcing its 2021 Year End results, the Company highlighted that it had presented 12-Month Phase 2a Open Label Extension (OLE) clinical data at the American Society of Hematology (ASH) annual meeting and that it reported first clinical data for Tovinontrine in Beta-Thalassemia.

25.     Speaking on the positive results, CEO Defendant Ballal said, "'In 2021, we executed to plan by completing enrollment in our Phase 2b programs and keeping studies on track for upcoming interim readouts, despite the challenges of the COVID-19 pandemic," ……"Furthermore, we added an important clinical indication in heart failure with preserved ejection fraction (HFpEF) for tovinontrine, and expanded our pipeline to include another oral, clinic-ready asset in IMR-261. Throughout the year we engaged the FDA on our sickle cell disease (SCD) program and in November 2021, received a written recommendation to change the primary endpoint for our Ardent Phase 2b clinical trial to annualized rate of vaso-occlusive crises (VOCs). We believe that this is a materially positive development since the reduction in annualized VOC rate is an important clinical outcome measure for patients and providers, as well as an established approval endpoint."

26.     The sustained clinical success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Imara.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused Imara to enter into the Proposed Transaction without providing requisite information to Imara stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, the Registration Statement fails to disclose adequate reasoning as to why the board would agree to a deal in which shareholder's interest would be diluted, with no consideration given.

30.     The Registration Statement fails to disclose whether a committee of disinterested directors was formed to review the Proposed Transaction and if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed.

31.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Enliven, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33.     On October 13, 2022, Imara and Enliven issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **Boulder, CO and Boston, MA, Oct. 13, 2022 (GLOBE NEWSWIRE)** -- Enliven Therapeutics, Inc. (Enliven), a clinical-stage precision oncology company focused on the discovery and development of next-generation small molecule kinase inhibitors, and Imara Inc. (Nasdaq: IMRA) (Imara) today announced that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The combined company will focus on advancing Enliven's pipeline of

precision oncology product candidates. Enliven is advancing two parallel lead product candidates: ELVN-001, a highly selective small molecule BCR-ABL inhibitor designed to address the challenges that limit the efficacy, tolerability and convenience of currently available adenosine triphosphate (ATP)-competitive tyrosine kinase inhibitors (TKIs) in the treatment of chronic myeloid leukemia (CML), and ELVN-002, a potent, selective and irreversible HER2 and pan-HER2 mutant kinase inhibitor for the treatment of HER2 mutant lung cancer and other HER2-driven tumor types. Upon completion of the merger, which is subject to approval by Imara's and Enliven's stockholders, the combined company is expected to operate under the name Enliven Therapeutics, Inc. and trade on the Nasdaq Global Select Market under the ticker symbol ELVN.

In support of the merger, Enliven also intends to raise approximately $165 million in a concurrent private financing co-led by new investors Fairmount and Venrock Healthcare Capital Partners, with participation from additional new investors, which include Fidelity Management & Research Company, RA Capital Management, Frazier Life Sciences and Commodore Capital. All of Enliven's existing investors will participate in the financing, including OrbiMed, 5AM Ventures, Surveyor Capital (a Citadel company), Cormorant Asset Management, Roche Venture Fund, Sheatree Capital, Boxer Capital, Logos Capital and Janus Henderson Investors. The financing was oversubscribed and new investor allocations account for over 60% of the total size of the financing, which is expected to close immediately prior to the completion of the merger.

With the cash expected from both companies at closing and the proceeds of the planned concurrent financing, the combined company is currently expected to have approximately $300 million of cash and cash equivalents at closing, after transaction expenses. The cash resources are expected to be used to advance Enliven's pipeline through multiple clinical milestones and provide runway into early 2026. The merger and financing are expected to close in the first quarter of 2023, subject to stockholder approval of both companies, the effectiveness of a registration statement to be filed with the U.S. Securities and Exchange Commission (SEC) to register the shares of Imara common stock to be issued in connection with the merger, and the satisfaction of customary closing conditions.

"We are excited to announce this merger with Imara, which comes at a pivotal moment for Enliven. We recently initiated our Phase 1 clinical trial for ELVN-001, which is being evaluated in adults with CML, and expect to file our IND for ELVN-002 by the end of the year. We expect this transaction to provide Enliven with capital to fund us through multiple key milestones and allow us to explore the potential of our pipeline. We look forward to helping people with cancer to not only live longer, but live better," said Sam Kintz, MBA, Enliven's Co-founder and Chief Executive Officer.

"Following an extensive and thoughtful review of several strategic alternatives, it became clear that the proposed merger with Enliven was a compelling option for

our stockholders," said Rahul Ballal, Ph.D., President and Chief Executive Officer of Imara. "Enliven has a differentiated pipeline, an experienced team and we expect the combined company to be well financed by top-tier investors to execute on its clinical mission. We look forward to the company's continued progress in the clinic."

***Potential Conflicts of Interest***

34.     The breakdown of the benefits of the deal indicate that Imara insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Imara.

35.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Imara, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

37.     On November 10, 2022, the Imara Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a. Adequate information as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction. If so, the identity of the directors who sat on the committee and what powers the committee had. If not, the reasoning for failing to create such a committee;

b. Adequate information as to why the board agreed to a transaction where shareholder's interests will be diluted and no consideration will be received;

c. Whether the confidentiality agreements entered into by the Company with Enliven differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Enliven, would fall away; and

e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Imara's and Enliven's*
*Financial Projections*

39.    The Registration Statement fails to provide material information concerning financial projections for Imara provided by Imara management to the Board and SVB Securities and relied upon by SVB Securities in its analyses.   The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.    Notably the Registration Statement reveals that as part of its analyses, SVB Securities reviewed "certain internal information, primarily related to expense forecasts, relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Imara."

41.    The Registration Statement should have, but fails to provide, certain information in the projections that Imara management provided to the Board, SVB Securities.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

42.    With regard to *Certain Unaudited Financial Projections* prepared by Imara, the Registration Statement fails to disclose material line items, including the following:

      a.  Global Net Sales, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the specific inputs and adjustments used for risk;

      b.  Operating Income, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: cost of goods sold, research and development expenses, commercial expenses and general and

administrative expense; and

    c.    Unlevered Free Cash Flow; as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: tax and change in working capital.

43.    The Registration Statement fails to disclose any material projection data for Enliven, preventing plaintiff from being fully informed as to the extent to which her interest is being diluted.

44.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45.    The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

46.    This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the SVB Securities' financial analyses, or make an informed decision whether to seek appraisal for her shares in regards to the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by SVB Securities*

48.     In the Registration Statement, SVB Securities describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With respect to the *Valuation Analysis – Discounted Cash Flow* for Enliven, the Registration Statement fails to disclose:

   a.   The terminal value for Enliven;

   b.   The specific values for the stand-alone, unlevered, after-tax free cash flows that the Enliven was forecasted to generate from January 1, 2023 through December 31, 2045;

   c.   The inputs, metrics, and assumptions used to determine an annual decline ranging from 30% to 50%;

   d.   The inputs, metrics, and assumptions used to determine discount rate ranging from 11% to 13%.

50.     With respect to the *Other Factors* section, the Registration Statement fails to disclose:

   a.   The specific companies compared;

   b.   The enterprise value of each company compared;

   c.   the number of fully-diluted shares outstanding for Enliven; and

   d.   The specific inputs, metrics, and assumptions used to determine a 20%

illiquidity discount.

51.     The Registration Statement fails to disclose any material valuation analysis, such as a discounted cash flow analysis, with regard to Imara, depriving common shareholders of adequate information necessary to determine whether the consideration offered is adequate.

52.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to seek appraisal of their shares relating to the Proposed Transaction.

53.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Imara stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

54.     Plaintiff repeats all previous allegations as if set forth in full herein.

55.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

56.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or
> instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

57.      As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Registration Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58.      The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59.      The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

61.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

64.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The

Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Imara's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

66.     The Individual Defendants acted as controlling persons of Imara within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Imara to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Imara and all of its employees.  As alleged above, Imara is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 23, 2022                **BRODSKY & SMITH**

By:  */s/ Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*